UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

                                                      Case No. 11-20014-01
NICOLE LYNN ROTHE,                          Honorable Julian Abele Cook, Jr.

       Defendant.

ORDER

The Defendant in this criminal matter, Nicole Lynn Rothe, after having pled guilty to two counts of conspiring to commit wire fraud in violation of 18 U.S.C. § 371, has now filed a motion for bail pending appeal, as authorized by 18 U.S.C. § 3143(b). For the reasons that have been set forth below, her request will be, and is, denied.

I.

Rothe, a mortgage broker and loan officer, actively participated in a conspiracy in which fraudulent mortgages were obtained in approximately five hundred properties throughout the metropolitan Detroit, Michigan area. It is Rothe's contention that, despite having initially entered this conspiracy in 2004, she did not become fully aware of her fellow conspirators' criminal intent and purpose until March 2005. Nevertheless after learning of their fraudulent scheme, Rothe continued to participate in this illegal enterprise that incorporated legitimate lenders in one hundred forty six (146) loans which, in turn, caused them to sustain losses of nearly thirty seven million

1

dollars ($37,000,000).

II.

The extent and scope of Rothe's participation in this conspiratorial enterprise is in dispute and constitutes a portion of her pending appeal. However, both parties agree that Rothe did process fraudulent loan applications on behalf of "straw buyers" during the period of time that was identified in the Information. Moreover, the Government maintains that she induced these "straw buyers" to join this criminal scheme in which other loan processors who submitted fraudulent loans were supervised by her. However, Rothe, while acknowledging that the Government's position is partially correct, insists that she recruited investors only prior to learning of the fraud and worked alone at home without management or supervisory duties.

In December 2011 when Rothe pled guilty to two counts of conspiracy to commit wire fraud, the parties had agreed upon a proposed sentencing guideline range of 108 to 120 months. On August 27th of the following year, the Court placed her in the custody of the Bureau of Prisons for two consecutive five (5) year terms. An appeal to the Sixth Circuit followed, in which she complained that her trial counsel had rendered ineffective legal assistance during the plea negotiations and sentencing phase of this case.

II.

The Bail Reform Act, 18 U.S.C. § 3143(b), while permitting the release of a defendant during the pendency of an appeal, nevertheless creates a presumption of detention of the appellant. *See United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988) (interpreting the similar language of § 3143(a)). According to this statute, the Court must enter an order of detention of Rothe unless there is sufficient evidence which demonstrates that (1) she is not likely to flee or pose a danger

to the community by clear and convincing evidence; and (2) her appeal has not been made for the purpose of delay and raises a substantial question of law or fact which is likely to result in a reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.¹ 18 U.S.C. § 3143(b). "[A]n appeal raises a substantial question when the appeal presents a close question or one that could go either way and . . . the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985) (internal quotation marks omitted).

## III.

In order to address the issues in Rothe's currently pending motion, the Court will now turn to its exploration of 18 U.S.C. § 3143 and the *Pollard* standards. First, the Court concludes that Rothe has clearly satisfied the first requirement of § 3143(b). She (1) has strong family ties in the Eastern District of Michigan area, (2) was involved in criminal conduct that was nonviolent, and (3) fully complied with the conditions of her bond after being released on June 18, 2010. Furthermore, both parties agree that Rothe is neither a flight risk nor a danger to the community.

On the other hand, there is no evidence in this record which suggests that Rothe has satisfied the second requirement of § 3143(b). More to the point, the Government submits that (1) Rothe's argument on appeal is without any support in the record and (2) the policies and the practices of the Sixth Circuit indicate that it will refuse to hear a claim of ineffective assistance on

---

¹The language of 18 U.S.C. § 3143(b)(B)(iv) reads "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Here, Rothe has yet to be incarcerated.

3

direct appeal unless the claimed error is apparent from the record. *See United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) ("This Court typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record."); *see also United States v. Wells*, 623 F.3d 332, 347-48 (6th Cir. 2010) ("Ineffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail.") (quoting *Lopez-Medina*, F.3d at 737) (internal quotation marks omitted).

In its cursory review of Rothe's appeal, the Court preliminarily concludes that it is based primarily on undocumented statements by her counsel. In order to establish the ineffective assistance accusation of her counsel, she must demonstrate that her attorney's performance was sufficiently deficient to the extent that it was prejudicial to her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* court advises this Court that Rothe has an obligation to prove that her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.

However, it should be pointed out that the standard for prejudice varies – depending upon the context of alleged error. Here, Rothe alleges the claimed ineffective assistance of her counsel occurred during two important phases of the case; namely, plea negotiations and sentencing.

To support her claim of prejudice during the sentencing hearing, she must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (explaining that the *Strickland* prejudice analysis applies to errors committed during sentencing). In order to establish a prejudice during the plea negotiations, she must "show that there is a

reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (modifying *Strickland*'s prejudice prong to fit the context of plea negotiations).

Addressing her trial counsel's claimed errors during the plea negotiations, Rothe identifies two bases for her position. First, she submits that her trial counsel neither attempted to learn nor understood all of the facts in the case. According to Rothe, this failing prevented him from competently representing her interests during his discussions with the Government. More specifically, it is her position that she was induced by her trial counsel to sign a plea agreement which contained several erroneous "admissions"; namely, that she had (1) acted as a manager or a supervisor during the tenure of this conspiracy, and (2) induced "straw buyers" to participate in the conspiracy. In fact, Rothe insists that he knew or should have known that she (1) did not learn of the fraud until long after its conception, (2) worked alone, not as a supervisor, and (3) only recruited investors prior to learning of the fraud.

The record in this case does not support Rothe's claim. Rather, the record supports an opposite conclusion. The Rule 11 Plea Agreement, which Rothe signed, states that she "recruited many straw buyers" and directed other loan processors in completing fraudulent loan applications. Plea Agreement 3, ECF No. 7. At her plea hearing, Rothe (1) attested to the accuracy of the Presentence Investigation Report ("PSIR"), which states that she had "recruited numerous individuals to act as straw buyers" and "recruited individuals to assist in the loan processes and assisted and supervised their actions," PSIR ¶ 13, and (2) verbally advised the Court that she had recruited "straw buyers" and had negotiated their fees with the knowledge that the proffered information in the loan application was false, Plea Tr. 32:16-33:5, Dec. 13, 2011, ECF No. 44.

5

Further, Rothe conceded in her sentencing memorandum that even after becoming aware of the scheme, she "continued process [sic] said loan applications along with recruiting straw buyers." Def. Sent. Mem. 2, ECF No. 12.

Rothe also advances the argument that she was induced by her trial counsel to plead guilty with a promise by him that she would be placed on probation or house arrest when he should have known that the severity of the charges against her would almost guarantee a harsher penalty.

To the contrary, the record suggests that she voluntarily pleaded guilty with a full awareness of her risk of being placed in the custody of a federal penal institution for an extended period of time. Rothe signed an acknowledgment of the information which indicated that she understood that each of the two counts carried a maximum penalty of five years. Def. Ackn., ECF No. 5. She also executed a plea agreement which referenced a maximum ten-year penalty. Plea Agreement 5-6, ECF No. 7. The PSIR, which she reviewed, indicated that each count of wire fraud carried a maximum sentence of five years. PSIR ¶ 74. In addition, Rothe signed a guilty plea questionnaire, which indicated a maximum sentence of ten years. Guilty Plea Questionnaire, ECF No. 8. Significantly, Rothe, in completing the Guilty Plea Questionnaire, advised the Court that (1) her attorney had fully answered all of her questions about the criminal charges to her complete satisfaction, (2) she understood every provision in the plea agreement, and (3) her plea was not induced by any statement or representation that she would be treated with leniency by the Court. *Id.* At the hearing during which she tendered a plea of guilty, (1) Rothe was verbally informed by the Government (on the record) that she could receive a sentence of five years for each of the two counts and (2) declined to change her plea of guilty. Plea Tr. 34:10-14. She also attested that her decision to plead guilty was not influenced by an assurance that she would be treated with leniency.

*Id.* at 35:17-24. At the end of the plea hearing, Rothe was again informed that she faced a maximum statutory penalty of ten years imprisonment. *Id.* at 40:21-23.

Rothe maintains that her trial counsel committed two errors at sentencing. First, she submits that her trial counsel failed to object to certain erroneous statements within the PSIR which charged her with the usage of proceeds from her criminal wrongdoing to purchase two motorcycles and a motorboat. Rothe, however, attested on the record that the PSIR accurately reflected the facts. And even if those purchases were incorrectly attributed to Rothe, it is not clear that this error would justify a reduction of her sentence, given that Rothe (1) estimated her proceeds from the conspiracy to fall within a range of $300,000 to $400,000[2], Plea Tr., 27:15-16, and (2) does not dispute the bulk of her tainted purchases, including: a million dollar home, a nightclub, which she subsequently renovated, and several expensive motor vehicles; to wit, two Cadillac Escalades, one Lexus LS 430, and one Ford Excursion, PSIR ¶ 16.

Second, Rothe alleges that her trial counsel failed to competently utilize her reduced mental capacity as a mitigating factor prior to the implementation of the sentence. Although Rothe concedes the paucity within the record as it relates to virtually all of her claims, she argues that the existing record is adequate and sufficient for the Sixth Circuit to determine the merits of this claim on direct appeal. Specifically, she relies upon the medical information within the PSIR which, in her opinion, indicates that between March 2005 and September 2006 - a period that is contemporaneous with her participation in the conspiracy - Rothe was diagnosed with a major depressive disorder for which she received treatment for postpartum depression, suicidal ideation,

---

[2]The PSIR indicates that Rothe's share of the proceeds may have reached millions of dollars.

anxiety, and panic attacks. PSIR ¶¶ 57-60. Although this information - and, indeed, the entire PSIR - was read and evaluated by the Court prior to, and during the sentencing hearing, Rothe contends that her trial counsel failed to competently argue the point.

The United States Sentencing Guidelines permit a downward departure if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S. Sentencing Guidelines Manual § 5K2.13. A significantly reduced mental capacity means that "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." *Id.* cmt. n.1. "[T]he extent of the departure should reflect the extent to which the reduced capacity contributed to the commission of the offense." U.S. Sentencing Guidelines Manual § 5K2.13.

Rothe cites *United States v. Cockett*, 330 F.3d 706, 713 (6th Cir. 2003) in support of her argument that she was entitled to a downward departure. However, the mental impairment evidence in *Cockett* was much more substantial than that contained in Rothe's PSIR. For example, Cockett's mental illness was sufficiently apparent and serious that she was declared by the judge to be incompetent to stand trial. *Id.* at 709. An independent psychologist, who examined Cockett on multiple occasions, noted that people with her profile "are often diagnosed as seriously mentally ill." In speaking about Cockett's ability to fully understand and control the consequences of her conduct, he said:

> At the time Mrs. Cockett committed the offenses leading to her finding of guilt, it is my opinion that she was experiencing ongoing symptoms of impairment in her ability both to exercise the power of reason and to control her behavior. Thus, although Mrs. Cockett has been found guilty of committing the offenses with which

> she was charged, it is my opinion that she did so while suffering a significantly
> reduced mental capacity.

*Id.* at 709, 710. Cockett's treating psychologist wrote that he "never found that Ms. Cockett can understand that she actually did something wrong." *Id.* at 710.

In this case, the diagnoses mentioned in the PSIR are insufficient to demonstrate that Rothe was entitled to a downward departure. *See, e.g.*, *United States v. Greenfield*, 244 F.3d 158, 162 (D.C. Cir. 2001) ("A diagnosis of depression, alone, does not establish that a defendant suffered from 'significantly reduced mental capacity' under § 5K2.13."). Absent from the record is any indication - by, for example, the statements of treating physicians - that her episodes of depression reflected a significantly reduced mental capacity or that it contributed substantially to the commission of the fraud. *See, e.g.*, *United States v. Watkins*, 179 F.3d 489, 500 (6th Cir. 1999) (affirming refusal to depart where defendant introduced evidence of depressive disorder but not of "alleged diminished capacity") (*abrogated on other grounds by United States v. Camacho-Arellano*, 614 F.3d 244, 248 (6th Cir. 2010)).

In contrast to the underlying facts in *Cockett*, the record here indicates that, although Rothe was fully aware that her conduct was criminally wrong, she nevertheless chose to participate in the crime. *See* Def. Sent. Mem. 3, ECF No. 12 (Rothe conceded that "upon learning the full scope of the scheme she should have ceased all activities and reported [the scheme] to the proper authorities"); Sent. Tr. 4:3-4, Aug. 27, 2012, ECF No. 24 ("I'm very embarrassed for the actions that I've taken. I'm very ashamed for my family and myself, and I'll never do anything like this ever again."); Pl. Tr. 27:21-28:2, ECF No. 44 (admitting that she understood when she learned of the fraud that her further participation was wrong). Thus the record does not support a finding that trial

9

counsel was ineffective for failing to argue for a downward departure.[3] This conclusion is corroborated by Rothe's intention to more fully develop this claim in habeas proceedings. *See* Def. Reply 3, ECF No. 43.

Even if Rothe does prevail on this claim, such a success in the courtroom would not fulfill the second requirement of 18 U.S.C. § 3143(b). In order to be eligible for release on bail, Rothe must satisfy an extremely limited range of sentencing alternatives which, if proffered, would demonstrate, among other things, that the question of law is substantial enough that a finding in her favor would warrant (1) a reversal, (2) a new trial, (3) a sentence which does not include a term of imprisonment, or (4) a reduced sentence to a term of imprisonment less than the expected duration of appeal.

Thus, any remedy for a courtroom victory on this particular issue would fail to meet the standards of 18 U.S.C. § 3143(b), inasmuch as her claim relates only to the severity of her sentence. As such, she would be ineligible for a reversal or new trial. Second, given that (1) the plea agreement guidelines provided for a term of imprisonment of 108 to 120 months and (2) she received the maximum sentence thereunder, any reduction in her sentence due solely to the diagnoses in the PSIR would almost certainly fail to produce a term of no imprisonment or one less than the expected duration of her appeal.

As none of her trial counsel's alleged errors have been sufficiently developed in the existing

---

[3]Rothe appears to limit this argument to the trial counsel's failure to argue for a departure based on her mental history. Furthermore, she has not contended that he erred by failing to argue the effect of her co-conspirator's threats on her culpability. In fact, at sentencing, the Court was well aware of Rothe's fear for her family. Rothe raised this issue herself at her plea hearing and trial counsel expressly argued that her continued participation in the scheme was motivated by threats. *See* Def. Sent. Mem. 4, ECF No. 12.

record, the Sixth Circuit likely will refuse to hear her claim on direct review. Given the lack of support in the record, even if the Sixth Circuit were to address the claim, it would likely do so only to deny it. *See United States v. Allen*, 242 F. App'x 303, 310 (6th Cir. 2007) ("In the rare instances where this court has reached ineffective assistance claims that were not first presented to the district court, however, it has generally denied them.").

Rothe argues that the Sixth Circuit might choose to decide her claims if she requests a stay of the appeal while initiating habeas proceedings under 28 U.S.C. § 2255. She offers, however, no case law indicating that contemporaneous habeas proceedings will save her appeal, while at least one example, *United States v. Grass*, 187 F.3d 638 (6th Cir. 1999), suggests the opposite. In *Grass*, the defendant, after a conviction and sentencing, appealed to the Sixth Circuit. While the appeal was pending, she filed a motion to vacate her sentence due to ineffective assistance of counsel pursuant to 28 U.S.C. § 2255. After the district court denied bond, Grass filed a motion in the Sixth Circuit for release pending appeal. The Sixth Circuit also denied release, explaining that "we usually will not review ineffectiveness claims on direct appeal, and that the filing of the § 2255 motion suggests that the record in this direct appeal is not sufficiently developed for purposes of assessing the merits of the ineffective assistance of counsel claim." *Id.* (internal quotation marks omitted).

The allegations raised by Rothe may have merit, but an evaluation of her claims cannot be made on the existing record. As her direct appeal will likely result in dismissal by the Sixth Circuit, Rothe has failed to satisfy the second requirement of 18 U.S.C. § 3143(b).

IV.

For the reasons that have been set forth above, the Defendants' motion for bail pending appeal (ECF No. 39) is denied.

IT IS SO ORDERED.

Date: October 24, 2012             s/Julian Abele Cook, Jr.
                                   JULIAN ABELE COOK, JR.
                                   U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 24, 2012.

                                   s/ Kay Doaks
                                   Case Manager